So far as I am informed, no case has arisen in this circuit on this question. The question presented was a doubtful one, was elaborately argued on both sides, and some costs ought to be allowed. An order remanding the cause is not reviewable, and therefore is in the nature of a final judgment. I think it can very fairly be brought under the provisions of section 824, Rev. St. U. S., of a case at law when judgment is rendered without a jury.

Let an order be entered, allowing a docket fee of $10

---

### BOKER et al. v. UNITED STATES.

(Circuit Court, S. D. New York. May 31, 1902.)

No. 2,456.

**1. TARIFF DUTIES—SHEET STEEL STRIPS.**

Strips of steel from 1 to 6 inches wide, in coils of 100 feet or more in length, varying in thickness from No. 10 wire gauge to No. 36, and shaped by passing through cold rolls, are, when of sufficient value, dutiable under Tariff Act 1894, par. 124, providing for sheet steel in strips, valued above 4 cents per pound; otherwise, under paragraph 122, providing for steel in all forms and shapes not otherwise provided for.

Appeal by H. Boker & Co. from a decision of the board of United States general appraisers, which affirmed the decision of the collector of customs at the port of New York.

The following is the opinion of the board of general appraisers:

We find that Messrs. Hermann Boker & Co. and Mr. F. S. Pilditch imported into the port of New York since August 28, 1894, as specified in the schedule annexed, quantities of steel, upon which duty was assessed at 40 per centum ad valorem, under the provisions of paragraph 124 of the tariff act of said August 28th, and which is claimed to be dutiable according to its value per pound, as steel in all forms and shapes, provided for in paragraph 122 of said act. Second. We further find said steel to be cold-rolled sheet steel, in strips, varying in width from less than 1 inch to not exceeding 6 inches, and mostly in coils exceeding 100 feet in length, and varying in thickness from No. 10 wire gauge to No. 36, and possibly in some instances thinner than No. 36. Said steel varied in value as well as in dimensions, a portion being at less than 4 cents a pound, and a greater portion above 4 cents a pound, as appears by the various invoices and the returns of the appraiser thereon. Paragraph 148 of the act of October 1, 1890, provided that flat steel wire or sheet steel in strips, whether drawn through dies or rolls, untempered or tempered, of whatsoever width, $25/1000$ of an inch thick, or thinner, ready for use or otherwise, should pay a duty of 50 per centum ad valorem. The United States circuit court of appeals for the First circuit, in U. S. v. Wetherell, 13 C. C. A. 264, 65 Fed. 987, reviewed several decisions of the board upon merchandise identical in character with the steel in question, and found it to be sheet steel in strips, and held it to be dutiable at 50 per centum ad valorem, under the paragraph last above mentioned. That paragraph, in so far as it related to flat steel wire or sheet steel in strips, was limited in its application to strips of a certain maximum thickness; while the corresponding provision in the present tariff limits its application to flat steel wire or sheet steel in strips above a certain minimum value. It will be observed that paragraph 122 of the act of 1894 covers steel in all forms and shapes, not specially provided for in the act. We do not find any other provision in the existing tariff which we can say with confidence is applicable to merchandise like that portion of the steel in question which is valued at not above 4 cents per pound. It is our opinion, therefore, that the steel embraced in these several importations which

is valued above 4 cents per pound was lawfully assessed at 40 per centum ad valorem, under the provisions of paragraph 124, and that the steel valued at not over 4 cents per pound is dutiable according to its value at the rates provided in paragraph 122. The claims in the various protests as to the steel valued not above 4 cents per pound are sustained, and the several decisions of the collector as to the steel valued above 4 cents per pound are affirmed.

Albert Comstock, for importers.
Charles D. Baker, Asst. U. S. Atty.

LACOMBE, Circuit Judge (orally). This is steel; it is sheet steel; it is in strips. The decision of the board is affirmed.

---

### In re BELDING.

### Ex parte WACHUSETT BANK.

#### (District Court, D. Massachusetts. June 27, 1902.)

#### No. 4,997.

**1. BANKRUPTCY—PREFERENCES—TRANSFER OF PROPERTY AS SECURITY.**
    A lien on property given by a debtor within four months prior to his bankruptcy, and while insolvent, as security for an antecedent debt, from which the creditor after the bankruptcy realized a sum which he applied as a payment on the debt, constitutes a preference, the same as a direct payment would have done, and the amount of the payment must be surrendered by the creditor before he can prove his debt.

In Bankruptcy. On review of referee's decision with reference to claim of Wachusett Bank.

Charles E. Ware, for trustee.
W. H. Leonard, for bank.

LOWELL, District Judge. The petition in bankruptcy in this case was filed August 3, 1901. The bankrupt was insolvent during the four months preceding the filing. On April 2, 1901, he was indebted to the creditor (1) on the $4,000 note here offered for proof, and (2) on a $1,000 note, for which the creditor held as collateral 10 shares of railway stock. On April 4th the bankrupt received from the creditor $5,000 cash and the $1,000 note, and gave a new note for $6,000, taking as collateral security therefor 40 shares of the stock, including the 10 shares before mentioned. Since the filing of the petition, this stock has been sold, and has realized more than the amount due on the $6,000 note. The balance of the proceeds was credited on the $4,000 note, leaving $3,017.80 due thereon, which last amount the creditor here seeks to prove. The trustee contends that the balance credited on the $4,000 note is a preference, which must be returned before the proof can be allowed. The creditor contends that it had a valid banker's lien on the amount claimed as a preference, which lien was left undisturbed by the bankrupt act. Without determining if there existed in this case the ordinary implied lien of a

¶ 1. See Bankruptcy, vol. 6, Cent. Dig. § 259.